The parties dispute whether plaintiff was able to resume his regular duties as a sanitation worker, following a compensable ankle injury, during the period January 26 — March 14, 1994, after which he found work with another employer.
Dr. Milton's deposition testimony contradicts his contemporaneous notes to the employer declaring that plaintiff was unable to continue working in the winter and spring of 1993. But in light of his further testimony that he was relying "totally on my notes . . . I probably wouldn't know [plaintiff] if he walked in the door", the fact that his disability opinion was omitted from his patient notes, and his opinion that plaintiff could not have continued in the job indefinitely, the Deputy Commissioner correctly concluded that the out-of-work notes better represented the doctor's informed medical judgment. Plaintiff's injured left ankle was swollen when Dr. Milton first saw it, nearly eight months after the plaintiff had last worked, and he confirmed by x-ray the diagnosis of arthritis induced by trauma. That two weeks of strenuous labor after that layoff caused this 40 year old, 260 pound, overweight man to have aches and pains in his other joints does not contradict the doctor's opinion that the injured ankle would prevent him from returning to his normal strenuous employment with the defendant. Given the effect on his ankle of returning to work in January, 1993, it must be considered a failed work attempt rather than proof that he could continue to do that job.
Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, or rehear the parties or their representatives, with minor modifications, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as
STIPULATIONS
1. The plaintiff was injured while working for the City of Charlotte Sanitation Department on December 16, 1991. Plaintiff stopped working and began receiving temporary total disability benefits on May 20, 1992. Plaintiff continued to receive temporary total disability benefits until January 11, 1993, when he returned to work. However, plaintiff was unable to work and went out of work again on January 26, 1993, and began receiving temporary total disability payments once again. The City of Charlotte began denying payments on February 4, 1993.
2. This claim was accepted by the employer, the City of Charlotte, as compensable, all benefits due and payable to plaintiff through the date of February 4, 1993 had been paid, and no dispute exists between the parties as to any matters occurring prior to that date.
3. Plaintiff returned to his employment with the City of Charlotte on January 11, 1993, and went back out of work again on January 26, 1993. However, he received temporary total disability payments until February 4, 1993.
4. Following February 4, 1993, until the time plaintiff began employment with another employer at comparable wages on March 15, 1994, no workers' compensation benefits of any kind were received by plaintiff.
5. The parties further stipulated that plaintiff was entitled to any additional benefits that could be determined from medical evidence documents, and the stipulations filed May 18, 1995, and therefore, there would be no other testimony taken.
6. The deposition testimony of Dr. Cecil J. Milton and Dr. Russell T. Garland has been received by the Commission.
* * * * * * * *
Based upon the credible evidence of record, the Full Commission makes the following
FINDINGS OF FACT
1. Plaintiff, a 40 year old male, was employed by the City of Charlotte as a sanitation worker on December 16, 1991. In the course of his employment, he stepped into a hole and injured his left ankle. He was paid for six days of disability beginning December 24, 1991 under an approved Form 21 agreement specifying that period. Being a City employee, plaintiff was first seen by Dr. Stephen J. Naso at the City Medical Clinic. Dr. Naso diagnosed plaintiff with an ankle sprain and treated him with an ankle brace, Epsom salt baths, and pain medication. Plaintiff returned to work and continued to work until May 19, 1992, when he reinjured his left ankle. Thereafter, defendant paid plaintiff temporary total disability benefits until January 11, 1993. At this time, plaintiff was experiencing continued pain in his left ankle and was eventually referred by Dr. Naso to Dr. Russell T. Garland for treatment.
2. Dr. Garland first saw plaintiff on June 10, 1992. Although plaintiff was diagnosed with reflex sympathetic dystrophy ("RSD"), Dr. Garland felt at that time that plaintiff could work as long as he was allowed to wear a removable cast. Within six weeks, the symptoms that had led to the RSD diagnosis had cleared; however, plaintiff complained of an unusual pain that with each visit to Dr. Garland seemed to shift to a different area in and around his ankle and foot.
3. In the months that followed. Dr. Garland ran extensive tests on plaintiff's ankle and referred him to several other doctors, including Dr. Oweida and Dr. DuPuy. The consensus reached by the doctors was that plaintiff would experience problems with his ankle, but that the injury was not serious enough to impede his ability to carry out his responsibilities to the Sanitation Department. By November 24, 1992, plaintiff still had subjective complaints of pain. According to Dr. Garland, there was no orthopedic basis for plaintiff's pain, and he was released to return to work with regular duties.
4. On June 12, 1992 the plaintiff, through counsel, moved the Commission for approval to treat with a physician of his own choosing at defendant's expense. However, plaintiff remained solely under the treatment of physicians approved by the defendant until going to Dr. Cecil J. Milton on December 16, 1992.
5. By November 1992, Dr. Garland, Dr. Oweida, and Dr. Naso could not find anything objectively wrong with plaintiff's ankle, noting that the location of plaintiff's pain moved around. Dr. Garland thought this represented symptom magnification and released plaintiff to regular duties.
6. Plaintiff, however, had objective symptoms. In fact, Dr. Garland specifically stated, "I will grant you that there may have been something there, but I couldn't find it with the diagnostic tools that are available to us in 1992, or even 1995. We don't know everything yet." Dr. Garland further indicated that if he were told that plaintiff had post-traumatic arthritis, he would believe it.
7. When seen by Dr. Milton on December 16, 1992, plaintiff's ankle was swollen. Dr. Milton suspected traumatic arthritis and related it to plaintiff's original compensable injury.
8. On January 11, 1993, plaintiff returned to his regular job, which involved jumping on and off sanitation trucks and walking that added up to several miles a day. By January 18, when he next saw Dr. Milton, the plaintiff, who weighed 260 pounds, complained of pain in both ankles. On January 26, 1993, Dr. Milton restricted plaintiff to limited walking and no performance of his regular duties, and indicated he would re-evaluate the plaintiff the following week. On April 15, 1993, Dr. Milton limited plaintiff from his regular duties as a sanitation worker indefinitely. After having been out of work for almost eight months and resuming the strenuous duties of his normal job for two weeks, plaintiff complained of "pain in multiple joints" when next seen by Dr. Milton on February 5, 1993. With rest, medication and heat (saline soaks), plaintiff's swelling and discomfort had improved by February 26, 1993.
9. As a result of plaintiff's compensable injury, he was temporarily totally disabled from January 26, 1993, until March 15, 1994, when he found new employment at "approximately the same wages as he had received from the City of Charlotte" at the time of the injury.
10. The medical treatment rendered by Dr. Milton improved plaintiff's condition and was reasonably necessary to effect a cure and give relief since Dr. Garland had not been able to find the problem and had released plaintiff. Plaintiff timely sought approval for a physician of his own selection.
* * * * * * * *
Based on the foregoing stipulations and findings of fact, the Full Commission makes the following
CONCLUSIONS OF LAW
1. Plaintiff was temporarily totally disabled from January 26, 1993 until March 14, 1994, and is entitled to temporary total disability benefits remaining unpaid for the period February 5, 1993 through March 14, 1994, at the compensation rate of $213.39 per week. N.C. Gen. Stat. § 97-29.
2. The Commission may approve the treatment of the physician selected by the plaintiff, for which approval was timely sought and whose services actually gave the plaintiff relief. N.C. Gen. Stat. § 97-25; Forrest v. Pitt Co. Bd. of Educ.,100 N.C. App. 119, 127, 394 S.E.2d 659 (1990).
* * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Defendant shall pay temporary total disability benefits to plaintiff at the rate of $213.39 per week from February 5, 1993 through March 14, 1994. As this compensation has accrued, it shall be paid to plaintiff in a lump sum, subject to the attorney's fee hereinafter approved.
2. Defendant shall pay all medical compensation expenses incurred by plaintiff as a result of his compensable injury, including, but not limited to, the treatment rendered by Dr. Milton.
3. An attorney's fee of twenty-five percent of the compensation awarded plaintiff is hereby approved. Said amount shall be deducted from the aforesaid award and paid directly to plaintiff's counsel.
4. Defendant shall pay the costs due the Commission.
 S/ _________________ J. RANDOLPH WARD COMMISSIONER
CONCURRING:
S/ ___________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ ___________________ BERNADINE S. BALLANCE COMMISSIONER
JRW:md